E-FILED
Thursday, 02 February, 2017 10:25:17 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| ANTHONY HUBBARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 15-3103 |
| | ) | |
| CECIL POLLEY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Respondent Cecil Polley's Motion to Dismiss Habeas Corpus Petition as Untimely (d/e 16). The Motion is GRANTED. Petitioner Anthony Hubbard's claims are untimely, and he has failed to satisfy the actual innocence exception to the limitation period.

## I. BACKGROUND

The following background information is taken from the state court records provided by Respondent (d/e 25, 26) and the appellate court decision, People v. Hubbard, 2013 IL App (5th)

120033-U.**¹**  See 28 U.S.C. § 2244(e)(1) (the state court's

determination of a factual issue is presumed correct, and the

petitioner bears the burden of rebutting the presumption by clear

and convincing evidence).

On July 29, 2008, Petitioner entered a negotiated plea to

predatory criminal sexual assault and was sentenced to 20 years of

imprisonment.  In exchange, the prosecution agreed not to charge

two other instances of sexual assault that the victim alleged

occurred during the same time frame alleged in the Indictment.  T.

42.

At the hearing, and before the prosecutor presented the

factual basis, defense counsel stated:

> I have advised my client with regard to the DNA evidence
> in this matter.  He is aware that it has been identified as
> semen, but it has not been identified as far as the type of
> DNA.  Pending additional charges, he is willing to accept
> the plea as stated by the State.

T. 43.  The factual basis for the plea provided that:

> (1) the victim, who was the defendant's 12-year-old
> stepdaughter, would testify that the defendant sexually

---

¹ The Court will cite the underlying state court record (d/e 25) as "C." and the page number and will cite the transcripts (d/e 26) as "T." and the page number.

assaulted her at the family's home; (2) the defendant
confessed to the police that he had sex with the victim in
exchange for purchasing for her some roller blades she
wanted; (3) a friend of the victim gave a written statement
to police wherein the friend claimed the victim had told
the friend about the assault; (4) the victim's mother gave
a statement to police wherein the mother claimed the
victim had told the mother about the assault; (5)  the
victim claimed that sheets taken from her bed contained
ejaculate from the defendant; (6) the victim hid the sheets
in her closet, then turned them over to police, who sent
them to a crime lab; and (7) the crime lab confirmed the
presence of semen on the sheets, but that no testing to
confirm the identity of the donor of the semen had been
done, and, pursuant to the plea agreement, none would
be done.

Hubbard, 2013 IL App (5th) 120033-U, at *1; see also T. 44-47.

Petitioner did not file a direct appeal.

The crime lab nonetheless completed the DNA testing on

August 28, 2008.  See T. 140 (investigator testimony at the state

court post-conviction evidentiary hearing that he did not call the lab

and cancel the testing); Laboratory Report dated August 28, 2008,

C. 96.  At some point, Petitioner filed a Freedom of Information Act

(FOIA) request and obtained the DNA testing results.  T. 97

(Petitioner's testimony at the state-court post-conviction evidentiary

hearing indicating that he received the report three years after the

date of the report); T. 150-51 (trial court confirming with Petitioner's

counsel, during state-court post-conviction evidentiary hearing, that Petitioner received the DNA report in August or September 2011).  The DNA testing showed the semen came from the victim's stepbrother, who sometimes stayed at the residence.  Hubbard, 2013 IL. App (5th) 120033-U, at ¶ 7.

On October 28, 2010, Petitioner filed a pro se state court petition for post-conviction relief.  On May 19, 2011, he filed an amended post-conviction petition.  The state trial court appointed counsel to represent Petitioner.

Petitioner raised several arguments in his state court post-conviction petition, including prosecutorial misconduct and that his trial counsel was ineffective for advising Petitioner to plead guilty without investigating the DNA evidence or seeking to suppress Petitioner's incriminating statements.  See Am. Petition at C. 56-73; and T. 54-179.  Petitioner also claimed he was actually innocent.[2] See C. 91 (raising actual innocence claim).

---

[2] The due process clause of the Illinois Constitution affords post-conviction petitioners the right to bring a freestanding claim of actual innocence in state court based on newly discovered evidence.  People v. Ortiz, 919 N.E. 2d 941, 949-50 (Ill. 2009).

Following an evidentiary hearing on January 12, 2012, the trial court denied the petition, finding that none of the public defender's actions were inappropriate and that no constitutional violations occurred.  The court noted that Petitioner testified at the evidentiary hearing that he knew it was not his DNA on the sheets and, as such, there was no reliance by Petitioner on the "DNA being anything to do with his case."  T. 171.  Petitioner nonetheless chose to plead guilty in exchange for 20 years, knowing that the DNA testing was not completed.  T. 173.

The court further found that a sufficient factual basis existed for the plea without the DNA evidence.  T. 173.  Petitioner wanted the plea to avoid additional charges which would have resulted in mandatory consecutive sentences.  T. 173.

The court also concluded that the fact that the DNA testing showed the semen on the sheets did not belong to Petitioner was not dispositive.  T. 175.  Specifically, the court noted that no DNA linked the victim to the sheets.  T. 175-176.  Therefore, the semen could have been put there in any situation, either innocently or by other people being involved.  T. 175.

On November 17, 2013, the appellate court affirmed.

Hubbard, 2013 IL App (5th) 120033-U.   The appellate court

rejected Petitioner's argument that the absence of Petitioner's

semen on the sheets meant that the facts asserted by the State to

support Petitioner's guilt could not be true.  Id. ¶ 8.  Specifically,

the appellate court noted that the State never claimed in its factual

basis to the trial court that the sheets contained Petitioner's

ejaculate.  Id.  Instead, the State represented to the court that the

victim claimed the sheets contained Petitioner's ejaculate, that the

sheets were turned over to the police, that the sheets were sent to

the crime lab, and that while the crime lab confirmed the presence

of semen, no testing to confirm the identity of the donor of the

semen was performed and, pursuant to the plea agreement, no

testing would be done.  Id.  That is, the court found that "the State's

factual basis clearly and unequivocally stated that the claim of the

victim had not been verified by scientific testing and, was only that:

an unsubstantiated claim, not a fact upon which the plea

agreement was based."  Id.

The appellate court also concluded that the absence of

Petitioner's ejaculate on the sheets did not mean, as a factual

matter, that Petitioner did not sexually assault the victim.  Id. ¶ 9.

The victim had alleged that the first sexual assault, which involved

the sheets, occurred between January 21, 2008 and February 5,

2008, but the sheets were not turned over until May 2008 when the

victim reported the assault to which Petitioner pleaded guilty and

the other alleged assaults. Id.  The appellate court found that:

> any number of scenarios could explain the absence of the
> defendant's semen on the sheets, and the presence of the
> semen of someone else who sometimes resided in the
> often messy, chaotic residence, especially when it is
> considered that the defendant did all the laundry in the
> residence, and several months passed between the time
> of the assault and the time the sheets were given to
> police.

Id.  Therefore, the appellate court concluded that the absence of

Petitioner's ejaculate on the sheets did not exonerate Petitioner of

the crime to which he pleaded guilty.  Id.  Finally, the appellate

court rejected Petitioner's argument that his confession was false.

The court found that issue waived and, waiver notwithstanding,

refuted by the DVD recordings of Petitioner's interviews.  Id. ¶¶ 10-

11.  The Illinois Supreme Court denied leave to appeal on March 26,

2014.  See People v. Hubbard, 5 N.E.3d 1126 (Ill. 2014).

On March 19, 2015,[3] Petitioner filed his § 2254 petition in this Court.  Petitioner raises three claims.  First, Petitioner asserts that he was denied due process "when scientific evidence demonstrates his actual innocence and that his guilty plea was not voluntarily, knowingly, and intelligently entered."  Pet. at p. 3.  Petitioner claims that the State's factual basis was that the victim said Petitioner assaulted her and his ejaculate was on her sheets, which she kept and later turned over to the police.  On retrial, Petitioner would then be able to use the DNA evidence to prove he was not the person who assaulted the victim and ejaculated on the sheets.

Petitioner's second claim is that he was denied due process when the prosecutor deceived Petitioner into waiving his Miranda rights (Miranda v. Arizona, 384 U.S. 436 (1966)) and confess to the crime.  Pet. at p. 8.  Petitioner argues that the Christian County State's Attorney, Thomas O. Finks, placed Petitioner under the impression that Petitioner did not need an attorney for questioning,

---

[3] This is the date Petitioner placed his petition in the institution's internal mailing system.  See Rule 3(d) of the Rules Governing § 2254 Cases in the United States District Courts ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.")

and that, if Petitioner waived his <u>Miranda</u> rights, he would be charged with the lesser offense of child endangerment and would be sent home.  Pet. at p. 9.  According to Petitioner, Mr. Finks has been found guilty of deception before.  <u>Id.</u> at p. 10.  Petitioner also argues that the questions posed to Petitioner by the investigator, Richard Bryan, were loaded questions.  <u>Id.</u>

As his final ground for relief, Petitioner argues that he was denied his right to effective assistance of counsel because his attorney did not investigate the exculpatory DNA evidence. Petitioner argues that his counsel should not have advised him to plead guilty based upon an incomplete investigation of the facts. Pet. at p. 13.  Petitioner claims he repeatedly asked his attorney about the DNA results but counsel misled Petitioner into believing he had no plausible defense and that Petitioner would have to pay for the DNA testing.  <u>Id.</u>  Petitioner also claims he repeatedly interrupted the plea proceedings to ask about the DNA sample.  Pet. at p. 14.[4]  In addition, counsel had only represented Petitioner for

---

[4] The transcript reflects only one interruption and the reason for the interruption by Petitioner is not identified.  T. 48.

approximately eight days before Petitioner pleaded guilty, which

Petitioner contends was not enough time for counsel to advise

Petitioner whether he had a plausible defense.  Id.[5]

On June 12, 2015, Respondent filed a Motion to Dismiss on

the ground that the § 2254 Petition was untimely.  On January 26,

2016, this Court denied the motion to dismiss with leave to refile

because Respondent did not fully address Petitioner's actual

innocence claim.

On March 16, 2016, Respondent filed the Renewed Motion to

Dismiss Habeas Corpus Petition as Untimely (d/e 16) at issue

herein.  The long delays in this case are due to Petitioner receiving

lengthy extensions of time to respond to both motions to dismiss.

---

[5] The record shows that when asked at the July 9, 2008 first appearance on the Information whether he wanted counsel appointed, Petitioner indicated he wanted to talk to the State's Attorney.  See T. 8.  On July 10, 2008, Petitioner specifically declined the appointment of counsel and indicated that he wanted to talk to the State's Attorney, who had been unavailable the day before.  T. 11-12.  On July 14, 2018, Petitioner again declined the appointment of counsel.  T. 17.  On July 15, 2008, the State's Attorney indicated an agreement had been reached, but Petitioner then stated that there was a problem so the matter was continued until that issue could be resolved.  T. 23-24.  Petitioner again waived his right to counsel.  T. 26.  On July 21, 2008, Petitioner indicated he needed a "Motion of Discovery" (T. 29), so the Court proceeded with arraignment and appointed counsel.  See T. 29 (missing page 3 of the transcript); see also Jan. 12, 2012 Tr., T. 60 (noting that counsel was appointed on July 21, 2008 when Petitioner did not respond to the judge about counsel).  As noted, Petitioner pleaded guilty to the Indictment (returned July 24) on July 29, 2008.

In addition, on November 29, 2016, counsel entered an appearance for Petitioner, although counsel has not filed anything on Petitioner's behalf.

## II. ANALYSIS

Respondent argues that Petitioner's § 2254 Petition is untimely under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) and should be dismissed.  Section 2244(d)(1) provides as follows:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme

Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(2) further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2).

Petitioner argues his claims are timely under § 2244(d)(1)(A) because he timely filed his state post-conviction proceedings, under § 2244(d)(1)(B) because the State's Attorney failed to send him the DNA results after having them for nearly three years, and under § 2244(d)(1)(D) because he filed within one year of the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence.

The timeliness of each claim asserted in a § 2254 petition must be considered independently. Davis v. United States, 817 F.

3d 319, 328 (7th Cir. 2016). The Court will consider the timeliness of Petitioner's claims that his guilty plea was not voluntarily, knowingly, and intelligently entered (Ground One), that he was deceived into waiving his Miranda rights (Ground Two), and that counsel was ineffective for failing to investigate the exculpatory DNA evidence (Ground Three). The Court will not consider separately Petitioner's actual innocence claim because the United States Supreme Court has not yet decided whether a freestanding actual innocence claim may be brought in a habeas petition. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"); but see Gomez v. Jaimet, 350 F.3d 673, 679 n.1 (7th Cir. 2003) (noting that, although the majority opinion in Herrera v. Collins, 506 U.S. 390 (1993) "appears to bar a habeas claim based solely on actual innocence, the concurring opinion of Justices O'Connor and Kennedy makes clear that a majority of justices agree that habeas relief would be warranted upon a truly persuasive showing of actual innocence, at least in a capital case"). Instead, the Court will examine actual innocence as a means of reaching otherwise

untimely claims.  See McQuiggin, 133 S. Ct. at 1928 (holding that a convincing showing of actual innocence can overcome a procedural bar or the expiration of the statute of limitations),

## A.   **The Petition is Untimely Under § 2244(d)(1)(A)**

Under 28 U.S.C § 2244(d)(1)(A), the relevant date for starting the limitations period for filing the federal habeas petition is the date on which Petitioner's conviction became final by the conclusion of direct review or the expiration of the time for seeking such review. Because Petitioner did not file a direct appeal, his conviction became final when the time for seeking direct review expired.

Petitioner was sentenced on July 29, 2008.  Pursuant to Illinois Supreme Court Rule 604(d), a defendant who pleads guilty may not appeal unless the defendant files a motion to withdraw the guilty plea within 30 days after the sentence is imposed.  Ill. S. Ct. R. 604(d).  Petitioner neither filed a motion to withdraw his guilty plea nor a notice of appeal.  Therefore, the time for seeking direct review expired on August 28, 2008—30 days after the trial court sentenced Petitioner.  See Page v. Anglin, No. 13 C 4298, 2013 WL 6050621, at *2 (N.D. Ill. Nov. 15, 2013) (holding that the petitioner had 30 days from the date of sentencing to take the steps necessary

under Illinois Supreme Court Rule 604(d) to file an appeal; his conviction became final for purposes of § 2244(d)(1)(A) when those 30 days expired).

Because the time for seeking direct review expired on August 28, 2008, Petitioner had until August 28, 2009 to file his federal habeas petition, unless the time was tolled by a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim. 28 U.S.C. § 2244(d)(2). Petitioner did not file a state post-conviction petition until October 28, 2010, well after the expiration of the one-year period calculated under § 2244(d)(1)(A). State post-conviction proceedings that are filed after expiration of the one-year statute of limitations do not restart the one-year period. De Jesus v. Acevedo, 567 F.3d 941, 943 (7th Cir. 2009) ("It follows that a state proceeding that does not begin until the federal year has expired is irrelevant."); Graham v. Borgen, 483 F.3d 475, 483 (7th Cir. 2007) (holding that a petition for collateral review filed after the federal habeas statute of limitations has expired does not toll the one-year statute of limitation). Therefore, under § 2244(d)(1)(A), all of the claims are untimely.

**B.** **The Petition is Untimely Under § 2244(d)(1)(B)**

Under § 2244(d)(1)(B), the one-year limitations period begins to run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action[.]" 28 U.S.C. § 2244(d)(1)(B). Although the statute does not define "impediment," the Seventh Circuit has held that "the plain language of the statute makes clear that whatever constitutes an impediment must <u>prevent</u> a prisoner from filing his petition." <u>Lloyd v. Van Natta</u>, 296 F.3d 630, 633 (7th Cir. 2002) (emphasis in original) (finding that because the petitioner was able to file his petition without a complete copy of his transcript, the state's failure to provide a complete transcript did not prevent the petitioner from pursuing any of his claims); <u>see</u> <u>also</u> <u>Estremera v United States</u>, 724 F.3d 773, 776 (7th Cir. 2013) ("Lack of library access can, in principle, be an 'impediment' to the filing of a collateral attack.").

Petitioner argues that the State's Attorney had the DNA results as of August 28, 2008 but failed to send them to Petitioner until Petitioner filed a FOIA request. Resp. at p. 5 (d/e 23). However,

Petitioner knew when he pleaded guilty that DNA testing had not been performed, and, therefore, that the DNA on the sheets did not identify Petitioner as the donor of the semen.  Moreover, Petitioner knew that, by pleading guilty, DNA testing would not be done. Therefore, he had no expectation that the State would provide those results to him after he pleaded guilty.

In addition, Petitioner does not allege when he requested the results or that the State delayed providing those results to him for any extensive period of time after Petitioner's request.  Instead, the record suggests that Petitioner sought the results in 2011 and received them in August 2011.  T. 97 (Petitioner testifying at the state post-conviction evidentiary hearing that he received the results in August 2011 but, when asked if that was when he requested the DNA results, testifying that "I didn't know it even existed"); T. 140 (prosecutor questioning the investigator at state post-conviction evidentiary hearing and referring to the "recent" FOIA request for the DNA results).

In addition, the failure to receive the DNA results did not prevent Petitioner from filing his § 2254 Petition, as evidenced by the fact that Petitioner filed his state post-conviction petition and

amended petition in October 2010 and May 2011, before Petitioner even received the DNA results. Consequently, the State's alleged failure to turn over the DNA results did not constitute a state-created impediment that prevented Petitioner from filing his § 2254 petition alleging that his guilty plea was not voluntarily, knowingly, and intelligently entered (Ground One) or alleging that counsel was ineffective for failing to investigate the DNA evidence (Ground Three). Petitioner has not identified any alleged impediment that prevented him from filing his claim that the prosecutor deceived Petitioner into waiving his <u>Miranda</u> rights (Ground Two). Therefore, all of Petitioner's claims are untimely under § 2254(d)(1)(B).

**C.**   **<u>The Petition is Untimely Under § 2244(d)(1)(D)</u>**

Under § 2244(d)(1)(D), the one-year period begins to run on the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. Petitioner essentially argues that his § 2254 Petition is timely because he discovered the DNA results in August 2011. At that time, his state post-conviction petition was pending and, according to Petitioner, tolled the limitation period until March 26, 2014, when the Illinois Supreme Court denied Petitioner's petition for

leave to appeal.  Therefore, Petitioner asserts that he timely filed his § 2254 Petition on March 19, 2015.

Under § 2244(d)(1)(D), the one-year time period begins to run when the evidence could have been discovered through diligent inquiry, not when it was actually discovered or its significance realized.  Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2001); see also Villanueva v. Anglin, 719 F.3d 769, 774 (7th Cir. 2013) (noting that the petitioner's "subjective knowledge of the important facts starts the limitation clock, but the clock also starts at the time a reasonable person would have discovered those facts").  The factual predicate for all three grounds that Petitioner raises in his § 2254 Petition—that the plea was not voluntarily, knowingly, or intelligently entered, that the prosecutor deceived Petitioner into waiving his Miranda rights, and that counsel failed to investigate exculpatory DNA evidence—was known to Petitioner when he pleaded guilty.  Petitioner knew when he pleaded guilty that the DNA had not and would not be tested and knew that his counsel had not investigated the DNA evidence.  Petitioner also knew all of the facts pertaining to his interviews and the waiver of his Miranda rights.

In addition, even assuming that the DNA results formed the factual basis of Petitioner's § 2254 claims, Petitioner has not shown that he was diligent in seeking those results.  The DNA results were available at least by August 28, 2008, the date of the report. Therefore, the results could have been discovered through the exercise of due diligence far earlier than August 2011 when Petitioner received them.  In fact, the record suggests that Petitioner did not even seek the DNA results until sometime in 2011. Therefore, he was not diligent, and all of the claims are untimely.

**D.    <u>Petitioner Has Not Demonstrated that the Actual Innocence Exception to the Limitations Period Applies</u>**

The Court may also reach Petitioner's constitutional claims if Petitioner can make a credible showing of actual innocence. <u>McQuiggin</u>, 133 S. Ct. at 1928 (recognizing that an actual innocence claim may overcome the expiration of the statute of limitations).  To make the requisite showing, a petitioner must demonstrate that, more likely than not, in light of the new evidence, any reasonable juror would have reasonable doubt.  <u>House v. Bell</u>, 547 U.S. 518, 538 (2006) (also noting that "absolute certainty about the petitioner's guilt or innocence" is not required).  In assessing a

petitioner's showing, the district court looks at "all of the evidence, both old and new, incriminating and exculpatory, without regard to whether the evidence would necessarily be admitted under rules of admissibility that would govern at trial." Id. (internal citations and quotation marks omitted).

A petitioner must support an actual innocence claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995) (noting that because such evidence is rarely available, actual-innocence claims are rarely successful). The evidence must be "documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." Hayes v. Battaglia, 403 F.3d 935, 938 (7th Cir. 2005).

Pleading guilty is not an absolute bar to an actual innocence claim. Bousley v. United States, 523 U.S. 614, 623-24 (1998). However, the fact of the plea is evidence that the defendant committed the crimes to which he pleaded. Ryburn v. Ramos, No. 09-cv-1176, 2014 WL 51880, at *4 (C.D. Ill. Jan. 7, 2014) (noting

that while pleading guilty does not bar an actual innocence claim,

"pleading guilty to a crime certainly makes it difficult for a court to

conclude it is likely no reasonable juror would find the petitioner

guilty beyond a reasonable doubt of the very crime to which he

plead[ed]").

Finally, if the prosecution "has foregone more serious charges

in the course of plea bargaining, petitioner's showing of actual

innocence must also extend to those charges." Bousley, 523 U.S. at

624; United States v. Taghon, No. 2:07-cr-149, 2:08-cr-184, 2016

WL 5247923, at *7 (N.D. Ind. Sept. 21, 2016) (requiring the

petitioner to demonstrate he was actually innocent of the charges

dismissed by government during plea negotiations to overcome the

expiration of the statute of limitations).  The actual innocence

standard is demanding and "permits review only in the

'extraordinary' case."  House, 547 U.S. at 538.

Petitioner has not made a credible showing of actual

innocence.  Petitioner knew when he pleaded guilty that the DNA

had not been tested and believed at that time that his DNA was not

on the sheets.  See Hubbard, 2013 IL App (5th) 120033-U, ¶ 4 (at

the plea hearing, "counsel for the defendant acknowledged that the

DNA evidence from the sheets did not identify the defendant as the donor of the semen"); T. 89 (Petitioner testifying at the state court post-conviction evidentiary hearing that he told the investigator that he would not find Petitioner's DNA on the sheets).  Therefore, in that regard, the evidence is not truly "new."  See, e.g., Jones v. Calloway, 842 F.3d 454, 461 (7th Cir. 2016) (noting that "new" does not mean newly discovered but means evidence that was not presented at trial).  That is, at the time Petitioner pleaded guilty, the evidence before the court was that the DNA evidence from the sheets did not identify Petitioner as the donor of the semen.

Even if the DNA results do constitute new, reliable evidence, Petitioner has not demonstrated that, more likely than not, in light of the new evidence, any reasonable juror would have reasonable doubt.  Although the victim indicated that the sheets contained ejaculate from Petitioner when she turned them over to the police, the absence of his DNA on the sheets does not exonerate him.  A jury would also hear evidence that the victim did not turn over the sheets until several months after the assault and that Petitioner told police that he did all of the laundry in the residence.  See Hubbard, 2013 IL App (5th) 120033-U, ¶ 9 (noting the defendant's

statement to the police that he did all of the laundry and that the house was so messy he often could not tell which laundry was clean and which was dirty; also noting that the incident was alleged to have occurred between January 21, 2008, and February 5, 2008, but the sheets were not turned over until May 2008).  Further, Defendant confessed to the police that he had had sex with the victim.  Id. ¶ 4 (describing the factual basis for the plea).  The victim's mother and friend gave statements to the police that the victim told them about the assault.  Id.; see also Hickman v. Director, TDCJ-CID, No. 6:14CV52, 2015 WL 294334, at *12 (E.D. Tex. Jan. 22, 2015) (overruling the petitioner's objections to and adopting the Report and Recommendation, which held that, even if the evidence had been tested and the petitioner's DNA was not found, that did not prove that the petitioner did not sexually assault the victim because of the other evidence, including eyewitness testimony).

Finally, Petitioner has not shown he is actually innocent of the two additional sexual assaults that the State declined to charge as part of the plea agreement.  See Lewis v. Peterson, 329 F.3d 934, 937 (7th Cir. 2003) (holding that the petitioner must also

Page **24** of **26**

demonstrate he was actually innocent of charges dismissed by the government that were as serious as the charge to which the petitioner pleaded guilty, not just those dismissed charges that were more serious); <u>United States v. Caso</u>, No. 07-332(RCL), 2012 WL 12905865, at \*4 (D.D.C. Jan. 12, 2012) ("It thus cannot be the case that the absence of a charge in an indictment or information is dispositive; if sufficient record evidence that the government considered a charge exists, the defendant must establish his innocence of that charge to cure a procedural default.").  Therefore, he cannot succeed on his actual innocence claim on that ground, as well.

In sum, Petitioner has failed to meet the high burden of showing that actual innocence should excuse the untimely claims in Petitioner's § 2254 Petition.

### III. CERTIFICATE OF APPEALABILITY IS DENIED

Rule 11(a) of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a

certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 118 n.3 (2009).  Because the untimeliness of Petitioner's § 2254 Petition is not debatable, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons stated, Respondent Cecil Polley's Motion to Dismiss Habeas Corpus Petition as Untimely (d/e 16) is GRANTED and Petitioner's § 2254 Petition (d/e 1) is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED. This case is closed.

**ENTER: February 1, 2017**

**FOR THE COURT:**

**    s/Sue E. Myerscough**
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**